**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| OLGA KAISER POWELL, *et al.*, ) | |
|         Plaintiffs, ) | Case No.  2:09-cv-01079-LDG-GWF |
| vs. ) | **ORDER** |
| TEXVANS, INC., *et al.*, ) | |
|         Defendants. ) | |

This matter is before the Court on Plaintiffs' Motion to Compel Discovery (#45), filed on July 28, 2010, and Defendants' Motion for Protective Order (#52) and Motion to Quash Subpoenas *Duces Tecum* (#53), filed August 18, 2010. The Court previously entered an order regarding these motions on September 23, 2010. *See Order (#63).* This matter is again before the Court in regard to Plaintiffs' request for production of Defendant Viliamu Taimne Solovi's Social Security Disability claim file which was not addressed in Order (#63).

**BACKGROUND AND DECISION**

This lawsuit arises out of a motor vehicle accident that occurred on June 11, 2008 at approximately 2:00 a.m. on Interstate 15 in Clark County, Nevada, near the Nevada-California border. According to the Nevada Highway Patrol accident report, Ernest William Powell was operating a pick-up truck in the right southbound travel lane of the interstate. His vehicle was either stopped or traveling at a very slow rate of speed and had its running lights on and four way hazard lights flashing. Defendant Solovi was operating a tractor-trailer in the right southbound lane of Interstate 15 at a speed at or near the 75 mph speed limit. Mr. Solovi's tractor-trailer collided with the rear of Mr. Powell's pick-up truck and propelled it off the roadway. Mr. Powell suffered severe injuries in the accident and died later that day. *See Plaintiffs' Motion to Compel (#45),*

*Exhibit "1."* Plaintiffs' Complaint (#1) alleges a cause of action against Mr. Solovi and his employers, Texvans, Inc. and Land Air Express, Inc. for negligence-vicarious liability.[1] Notwithstanding the information in the Highway Patrol accident report, Defendants have denied liability. Conceivably, their defense may be that Mr. Solovi was not negligent in failing to observe that Mr. Powell's pick-up truck was stopped or traveling at a very slow speed until it was too late to avoid a collision.

   Plaintiffs have sought to obtain Defendant Solovi's medical or other records relating to his physical or mental condition prior to and at the time of the accident for purposes of determining whether his physical or mental condition was a contributing factor to the accident. In support of this discovery, Plaintiffs cite the deposition testimony of Mr. Solovi and his wife that during the year 2008 Mr. Solovi experienced breathing problems, fatigue, weakness, dizziness, blurred vision and pain. It was unclear from the Solovis' testimony, however, whether Mr. Solovi experienced such symptoms before or after the accident on June 11, 2008. Plaintiffs moved for an order to compel Defendant Solovi to execute a medical release so that Plaintiffs could obtain his medical records through subpoena or otherwise. Although there is some contrary federal case law, decisions such as *Clark v. Vega Wholesale, Inc.*, 181 F.R.D. 470 (D.Nev. 1998) hold that a party cannot be compelled to execute an authorization for release of his medical records from his medical providers. The rationale of these cases is that a patient does not have control of medical records that are in the possession, custody or control of his medical providers, and that the party seeking the records can obtain them by serving a subpoena on the medical provider. Plaintiffs argued that *Clark* and similar cases decided prior to the enactment of the Health Insurance Portability and Accountability Act ("HIPAA"), should no longer be followed because medical providers are generally unwilling to produce medical records even in response to a subpoena, unless an executed

---

[1] On March 24, 2010, the District Court granted Defendants' unopposed motion for partial summary judgment and dismissed, with prejudice, Plaintiffs' second, third, fourth and fifth causes of action for negligent entrustment, negligent hiring, training, supervision and retention, negligence per se, and statutory punitive damages. *Order (#24).*

authorization for release of the records signed by the patient is also provided.

      The HIPAA regulations provide a satisfactory means for obtaining relevant medical records for purposes of litigation without the requirement for a signed authorization by the party. 45 C.F.R. §164.512(e)(1)(i) provides that a covered entity may disclose protected health information in the course of any judicial or administrative proceeding in response to an order of a court or administrative tribunal provided that the covered entity discloses only the protected health information expressly authorized by such order. Production of protected health information should only be made subject to a "qualified protective order" which the regulation states means an order of the court or administrative tribunal that (A) prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested and (B) requires the return of the information to the covered entity or the destruction of the information at the end of the litigation or proceeding. 45 C.F.R. §164.512(e)(1)(v). *See Bayne v. Provost*, 359 F.Supp.2d 234, 236-238 (N.D.N.Y. 2005) (discussing the statutory and regulatory framework).

      In Order (#63), the Court determined that Plaintiffs should be permitted to subpoena Mr. Solovi's medical records from January 1, 2005 to the present on the grounds that such records may contain information relevant to Mr. Solovi's physical or mental condition on the day of the accident. The Court ordered that the parties submit a qualified protective order consistent with 45 C.F.R. §164.512(e)(1)(v). The parties, however, could not agree on whether the qualified protective order should include Mr. Solovi's Social Security Disability benefits claim file which Plaintiffs had requested in their motion. *See Plaintiffs' Motion to Compel Discovery (#45)*, page 8. As Defendants correctly note, Order (#63) made no mention of Mr. Solovi's Social Security Disability claim records. The Court, however, simply overlooked this request in its order.

      Defendants' counsel has since confirmed that Mr. Solovi filed for Social Security Disability benefits in July 2009 and began receiving benefits in February 2010. Defendants argue that Mr. Solovi's Social Security file is therefore irrelevant because it post-dates the accident in this case. Social Security Disability claim files, however, may contain records and information about the applicant's physical or mental condition dating back several years before the claim was filed. It is

therefore reasonably possible that the file contains information relevant to this case.  The file also likely contains substantial information that has no bearing on this litigation and should not be disclosed to Plaintiffs.

The parties' attorneys have so far been unable to resolve discovery disputes by reasonable compromise.  Their dispute regarding Mr. Solovi's Social Security Disability claim file is but another example of this inability.  Therefore, in order to avoid further motions regarding Mr. Solovi's Social Security Disability claims file, the Court orders the following: Plaintiffs' counsel shall serve a subpoena duces tecum for production of Defendant Solovi's Social Security Disability claims file on the Social Security Administration (SSA) or appropriate agency.  The subpoena shall direct the SSA to produce the file in a sealed envelope or container.  Upon receipt of the sealed envelope or container, Plaintiffs' counsel shall deliver the unopened envelope or container to the undersigned magistrate judge's chambers for *in camera* review.  The Court will determine if the file contains any information relevant to Mr. Solovi's physical or mental condition on or about June 11, 2008 and shall enter an order specifically identifying the relevant records, if any, that are to be provided to counsel for all parties.  Any records produced to the parties pursuant to the *in camera* review shall be used only for purposes of this litigation and shall be destroyed at the conclusion of this case.

Based on the foregoing, the Court will also enter a qualified protective order in accordance with Order (#63) and this order.

**IT IS SO ORDERED.**

DATED this 15th day of November, 2010.

_____
GEORGE FOLEY, JR
U.S. MAGISTRATE JUDGE