UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| OLGA KAISER POWELL, *et al.*, ) | |
| Plaintiffs, ) | Case No. 2:09-cv-01079-LDG-GWF |
| vs. ) | **ORDER** |
| TEXVANS, INC., *et al.*, ) | |
| Defendant. ) | |

This matter is before the Court on Defendants' Motion Requesting an Order to Show Cause As to Why Sanctions Should Not Issue Against Plaintiffs ("Motion for Sanctions") (#104), filed on January 20, 2011; Plaintiffs' Opposition to Defendants' Motion for Sanctions (#111), filed on February 4, 2011; and Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion for Sanctions (#113), filed on February 14, 2011.  Also before the Court is Plaintiffs' Motion to Compel and for Sanctions (#112), filed on February 4, 2011; Defendants' Opposition to Motion to Compel and for Sanctions (#121), filed on February 22, 2011; and Plaintiffs' Reply in Support of Motion to Compel and for Sanctions (#124), filed on March 4, 2011.  The Court conducted hearings on these matters on March 1 and 15, 2011.

## BACKGROUND

This case involves a claim for wrongful death damages resulting from a motor vehicle accident in which Plaintiffs' decedent, Ernest Powell, sustained fatal injuries.  On June 11, 2008 at approximately 2:00 A.M., Mr. Powell was operating a 2007 Chevrolet Silverado pick-up truck on southbound Interstate 15 in Clark County, Nevada near Mile Marker 98.  Interstate 15 is a divided freeway.  The northbound and southbound lanes at the accident location were separated by a wide median.  There were two 12 foot wide southbound travel lanes, with a 4 foot wide paved shoulder

1   on the inside and a 10 foot wide paved shoulder on the outside.  The roadway was straight, level
2   and dry.  There was no lighting in the accident area other than ambient lighting from vehicles on
3   the freeway.  The speed limit was 75 miles per hour.  *Plaintiff's Opposition (#112), Exhibit 1,*
4   *Nevada Highway Patrol Traffic Accident Report.*

5        Mr. Powell's vehicle was in the No. 2 right travel lane and was either stopped or moving at
6   a very slow speed.  Defendant Viliamu Taimane Solovi was operating a Freightliner tractor-trailer
7   and was also traveling in the No. 2 right travel lane at or near the posted speed limit of 75 miles per
8   hour.  Mr. Solovi's tractor-trailer collided with the rear of Mr. Powell's pick-up truck.  Mr. Solovi
9   prepared a hand written statement after the accident which suggests that he did not see Mr.
10  Powell's vehicle until perhaps immediately before the collision.  There is no indication in the
11  traffic accident report that Mr. Solovi applied his brakes or took other evasive action prior to
12  impact.  Mr. Solovi testified that he accepted and paid the citation issued to him for failure to use
13  due care because "I know that I caused the accident."  *Plaintiff's Opposition (#112), Exhibit 3,*
14  *Solovi deposition, p. 134*.  Mr. Solovi's co-driver was reportedly asleep at the time of the accident
15  and did not witness what occurred.

16       Mr. Powell was partially ejected through the rear window of his pick-up truck.  He was
17  transported to the University Medical Center ("UMC") in Las Vegas where he died from his
18  injuries several hours later.  Mr. Powell was apparently conscious at some point after the accident.
19  *Defendant's Reply ((#113), Exhibit M, UMC record.*  He did not, however, provide an explanation
20  why his vehicle was stopped or moving slowly before the accident occurred.  There are no known
21  witnesses who observed Mr. Powell's vehicle prior to the collision.

22       The traffic accident report stated that Mr. Powell's vehicle "was traveling with its running
23  lights on and four way hazard lights flashing."  *Plaintiff's Opposition (#112), Exhibit 1, Traffic*
24  *Accident Report Summary*.  This statement was based on the investigating troopers' observations of
25  Mr. Powell's vehicle after the accident.  According to the troopers' subsequent deposition
26  testimony and their photographs of the vehicle, the right front parking lamp was illuminated and the
27  flashing arrow lamps on the exterior rear view mirrors were also illuminated.  An inspection of the
28  cab revealed that the key was in the ignition and the transmission was in drive.  The vehicle light

switch was in the middle "on" position which would illuminate the parking lights (but apparently not the headlights) and the emergency hazard light button was depressed in the "on" position. The left front parking lamp sustained damage and was not illuminated. The rear end of the pickup truck had sustained major damage and the rear parking lights and hazard lights were not illuminated. The Freightliner's headlights were also heavily damaged and were not illuminated after the collision.

According to Defendants' accident reconstruction expert, William Morrison, photographs of the rear of Mr. Powell's truck indicate that, despite the impact damage, the rear tail light assemblies were intact and available for inspection. Mr. Morrison states that the circuits to the rear lights could have been "corrupted" and the rear lights may not have been operating prior to the collision. He states that an inspection of the light bulbs for "hot shock" could have demonstrated whether the lights were operating at the time of the collision. *Defendants' Motion for Sanctions (#104), Exhibit K, Morrison Affidavit.*

Mr. Powell's pick-up truck was towed to the Quality Towing Yard in North Las Vegas, Nevada. The Quality Towing record indicates that the vehicle was "STORED NO HOLD." The vehicle remained at Quality Towing until at least June 24, 2008 on which date the record indicates that the vehicle was released. *Defendants' Reply (#113), Exhibit. T.* Mr. and Mrs. Powell's insurer, 21st Century Insurance Company, apparently declared the vehicle a total loss and paid the insurance proceeds to the lien holder GMAC in or about July 2008. *Defendants' Reply (#113), Exhibit. U.* GMAC delivered the vehicle title to the insurer on or about July 31, 2008. *Plaintiff's Opposition (#112), Exhibit 21.*

On September 2, 2008, Plaintiff's counsel Leonard Stone sent a letter to Defendants' insurer, Great West Casualty Company, notifying it that he had been retained to represent Plaintiffs in regard to the damages and injuries sustained in the June 11, 2008 accident. Mr. Stone stated that he was in the process of gathering information and would be in contact with the insurer in the future. *Defendants' Reply (#113), Exhibit W.* Mr. Stone sent a follow-up letter to Defendants' insurer on October 15, 2008. He stated that the traffic accident report indicated that Defendants' tractor-trailer had also been transported to Quality Towing in North Las Vegas. Mr. Stone

demanded that the tractor-trailer be made available for inspection by Plaintiff's expert. *Defendants Response in Opposition to Plaintiffs' Motion to Compel and for Sanctions (#121), Exhibit C.* Mr. Stone's letter made no mention of Mr. Powell's vehicle.

Defendants' counsel Michael Mills responded to Mr. Stone's October 15th letter on behalf of Defendants and their insurer on November 17, 2008. *See Affidavit of Leonard Stone in Support of Plaintiff's Opposition to Motion to Compel (#41), Exhibit E.* Mr. Mills stated that Defendants' vehicle was repaired within two or three weeks after the accident, and noted that neither Mr. Stone nor his clients had asked for inspection of the vehicle prior to or during the repairs. Mr. Mills stated that it was important for Defendants' business to have the vehicle repaired and placed back in service. Mr. Mills further stated that he had instructed his clients and the carrier to retain other information requested by Mr. Stone, including log books, reports, statements, photographs, maintenance records and purchase receipts. Mr. Mills also indicated that the vehicle's electronic control module had been downloaded and preserved. Mr. Mills did not request that Mr. Powell's pick-up truck be preserved or made available for inspection by the Defendants. Nor is there any evidence that Defendants or their representatives thereafter made any request to inspect Mr. Powell's pick-up truck prior to the commencement of this action on June 16, 2009.

Defendants served requests for production of documents or things on Plaintiffs' counsel in February 2010, which included requests that Mr. Powell's truck and/or the truck's electronic control module be made available for inspection. In their April 9, 2010 response to these requests, Plaintiffs stated that they did not have possession or custody of the pick-up truck, but that they were scheduling a custodian of records deposition of Quality Towing to determine the truck's current location or the location of the truck's electronic devices. *Defendants' Motion to Compel (#36), Exhibit G, Plaintiffs' April 9, 2010 Responses to Requests for Production.* In April 2010, Plaintiffs' counsel served subpoenas on Quality Towing, Snap Towing, 21st Century Insurance, and GMAC in an attempt to determine what became of the pick-up truck. The issuance of these subpoenas was apparently the first effort made by Plaintiff's counsel to locate Mr. Powell's pick-up truck. There is no information that Defendants made any independent effort to locate the pickup truck and determine whether it could still be inspected. What became of Mr. Powell's pick-up

4

truck after June 24, 2008 is unknown.

## DISCUSSION

### 1. Motions for Sanctions for Failure to Preserve Vehicles.

Each party requests that the opposing party be sanctioned for its failure to preserve its vehicle or relevant components. Defendants argue that an inspection of Mr. Powell's pick-up truck would have allowed their expert to determine whether the rear parking and emergency hazard lights were illuminated prior to the collision. Additionally, such an inspection could have refuted the suggestion that Mr. Powell's vehicle experienced a mechanical problem which caused him to slow down or stop on the freeway. Defendants contend that Mr. Powell was medically unfit to operate a motor vehicle and that his driving behavior was likely the result of a physical or mental episode. Plaintiffs, in turn, argue that Defendants should be sanctioned for failing to preserve the damaged headlights and wiring assembly of the Freightliner tractor so that they could be inspected to determine if the headlights were properly functioning prior to the accident.

The court has the inherent authority to impose sanctions based on a party's failure to preserve relevant evidence. A party may only be sanctioned if he or she had some notice that the evidence was potentially relevant to pending or reasonably foreseeable litigation. *United States v. $40,955.00 In U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); and *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 1992). *See also Durham v. County of Maui*, 2010 WL 3528991, at *4 (D.Hawai'i 2010). Sanctions may also be imposed under Rule 37 of the Federal Rules of Civil Procedure if a party destroys relevant evidence in violation of a discovery order. *Leon v. IDX Sys. Corp.*, 464 F.3d at 958. In this case, there is no evidence that Mr. Powell's pick-up truck was still available for inspection at the time Plaintiffs filed the complaint. Likewise, Defendants repaired the tractor and disposed of the damaged parts within a month after the accident. Therefore, sanctions can only be imposed in this case pursuant to the Court's inherent authority.

*In re Napster*, 462 F.Supp.2d 1060, 1066 (N.D.Cal. 2006), states that sanctions may be imposed on a party responsible for spoliation of evidence in three ways:

. . .

> First, a court may instruct the jury that it may draw an inference adverse to the party or witness responsible for destroying the evidence. See *Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir.1993); *Akiona v. United States,* 938 F.2d 158, 161 (9th Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1567, 118 L.Ed.2d 212 (1992). Second, a court can exclude witness testimony proffered by the party responsible for destroying the evidence and based on the destroyed evidence. See *Glover,* 6 F.3d at 1329; *Unigard,* 982 F.2d at 368-69. Finally, a court may dismiss the claim of the party responsible for destroying the evidence. *See Allstate Ins. Co. v. Sunbeam Corp.,* 53 F.3d 804, 806-07 (7th Cir.1995); *see also Chambers,* 501 U.S. at 45, 111 S.Ct. 2123 ("outright dismissal ... is a particularly severe sanction, yet is within the court's discretion"); *Alexander v. National Farmers Org.,* 687 F.2d 1173 (8th Cir.1982), cert. denied, 461 U.S. 937, 103 S.Ct. 2108, 77 L.Ed.2d 313 (1983) (dictum) (dismissal of claims is a severe sanction and may be warranted for "outrageous" destruction of evidence).

*See also Morford v. Wal-Mart Stores, Inc.*, 2011 WL 635220, *3 (D.Nev. 2011) (decision by Magistrate Judge Leen).

A party's destruction of evidence need not be in "bad faith" to warrant imposition of sanctions. The court may impose sanctions on a party who merely had notice that the destroyed evidence was potentially relevant to litigation. *"*However, a party's motive or degree of fault in destroying evidence is relevant to what sanction, if any, is imposed." *In re Napster,* 464 F.Supp.2d at 1066-67, citing *Baliotis v. McNeil,* 870 F.Supp. 1285, 1291 (M.D.Pa.1994). Courts should choose "the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *Schmid v. Milwaukee Electric Tool Corp.,* 13 F.3d 76, 79 (3rd Cir.1994); *Dillon v. Nissan Motor Co., Ltd.*, 986 F.2d 263 (8th Cir. 1993).

Plaintiffs argue that sanctions may not be imposed on them because they did not have ownership, possession, or control of the pick-up truck after the accident. They argue that the lien holder, GMAC, had the right to ownership and possession of the vehicle under California law. The court was faced with a similar argument in *Durham v. County of Maui*, 2010 WL 3528991 (D.Hawai'i 2010). In that case, the plaintiffs' decedents were occupants of a rental vehicle that was involved in a fatal intersection collision. The defendant car rental company reported the accident to its insurer. The insurer conducted an investigation and initially placed a hold on the vehicle. Thereafter, the insurer declared the vehicle a total loss, paid over the insurance proceeds and acquired title to the vehicle. The insurer's investigator recommended that the vehicle be preserved

for future inspection in the event a claim or lawsuit was filed regarding alleged defects in the vehicle. The defendant's representative also requested that the insurer preserve the vehicle. The insurer, however, disposed of the vehicle approximately 6 months after the accident. The plaintiffs subsequently filed an action against the defendant rental car company and the vehicle manufacturer on the grounds that the rental vehicle's defective design enhanced the occupants' injuries.

In rejecting the defendant's argument that it was not responsible for the destruction of the vehicle, the *Durham* court held that the insurer's conduct was imputed to defendant. *Id.*, 2010 WL 3528991 at *6. The court also quoted *Silvestri v. General Motors Corp.*, 271 F.3d 583, 592 (4th Cir. 2001), which states that "[i]f a party cannot fulfill this duty to preserve because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence." The plaintiff in *Silvestri* was involved in an accident while driving his landlady's automobile. Although plaintiff's attorney had two experts inspect the damaged vehicle after the accident, no effort was made to preserve the vehicle or notify defendant of the claim so that it could also inspect the vehicle. In *Trull v. Volkswagen of America, Inc.*, 187 F.3d 88 (1st Cir. 1999), the court also imposed sanctions and precluded plaintiff from testifying about his inspection of the vehicle's seatbelts because he made no effort to prevent the insurer from disposing of the vehicle before it could be inspected by the manufacturer. Accordingly, Plaintiffs are not absolved from responsibility for the alleged failure to preserve Mr. Powell's vehicle on the ground that they did not have ownership or possession of pick-up truck after the accident.

The principal issue is whether the parties were on notice that their respective vehicles were potentially relevant evidence to anticipated litigation and should be preserved for future inspection by the other party. Courts have no difficulty in finding that a plaintiff is on notice of the relevance of a motor vehicle or other product where the plaintiff believes that a design defect or mechanical malfunction caused or contributed to his injuries or damages. *See e.g. Silvestri v. General Motors Corp.* (allegedly defective airbag); *Trull v. Volkswagen of America, Inc.* (defective seatbelt design); *Dillon v. Nissan Motor Co., Ltd.*, 986 F.2d 263 (8th Cir. 1993) (defective seatbelt retractor); *Lekkas v. Mitsbishi Motors Corp.*, 2002 WL 31163722 (N.D. Ill. 2002) (defective design making vehicle

prone to rollover); and *Lord v. Nissan Motor Co., Ltd.*, 2004 WL 2905323 (D.Minn. 2004) (defectively designed seat). As *Durham v. County of Maui* indicates, a defendant or its representative may also be on notice where the circumstances indicate that a claim based on a mechanical or design defect may be made. The preservation of the vehicle is arguably less critical in a case involving an alleged design defect than a mechanical malfunction, although it may still be important to inspect the vehicle to determine whether the alleged design defect was a cause of the accident or injury. *Durham v. County of Maui*, 2010 WL 3528991 at *7, citing *Collazo-Santiago v. Toyota Motor* Corp., 149 F.3d 23, 29 (1st Cir. 1998) and *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79-80 (3rd Cir. 1994).

      The Court first addresses whether Defendants breached a duty to preserve the headlights and wiring assembly on the Freightliner. An insurer or other experienced litigant is generally more likely to recognize the potential relevance of evidence and is therefore held to a higher standard regarding preservation than is a lay person who has no prior litigation experience. *Northern Assur. Co. v. Ware*, 145 F.R.D. 281, 284 (D. Maine 1993); *Workman v. AB Electrolux Corp.*, 2005 WL 1896246 at *5 (D.Kan. 2005). Defendants and/or their insurer repaired the Freightliner and disposed of the damaged parts within two or three weeks after the accident. Given that Defendants' vehicle collided with the rear of Mr. Powell's pick-up truck, causing the latter's death, Defendants and their insurer should have known that it was likely that Mr. Powell's heirs and/or estate would pursue a wrongful death claim or lawsuit. While there was no specific evidence that the headlights on Defendants' vehicle were not working properly prior to the collision, the fact that Mr. Solovi apparently did not see Plaintiff's vehicle arguably raised a question as to whether the lights on either or both vehicles were operating properly. Defendants' assertion that they had no reason to preserve the headlights and wiring assembly is contradicted by their argument that Plaintiffs had a duty to preserve the taillight assembly on Mr. Powell's pick-up truck. Defendants acted precipitously in repairing the Freightliner tractor and disposing of the headlights and wiring assembly without first determining whether the vehicle should be made available for inspection by Plaintiffs.

. . .

Turning to the Plaintiffs' alleged failure to preserve the pick-up truck or its taillight assembly for later inspection, the Court finds that Mrs. Powell was not on notice of the potential relevance of the pick-up truck prior to the time she retained counsel. Her claim against Defendants was not based on a product defect. Nor was there a specific indication in the accident report that any defect in the pick-up truck was a factor in the accident that would have apprised Mrs. Powell of the importance of preserving the vehicle for later inspection. Once Plaintiffs retained counsel, however, their duty to preserve relevant evidence was on equal footing with that of Defendants and their insurer. Plaintiffs' attorney, Mr. Stone, notified Defendants' insurer on September 2, 2008 that he had been retained by Plaintiffs and that he was in the process of gathering information concerning the accident. On October 15, 2008, Mr. Stone requested that Defendants make the tractor available for inspection by his expert. There is no indication, however, that Mr. Stone made any attempt at that time to locate Mr. Powell's pick-up truck and determine whether it was still available for inspection. Not surprisingly, by the time that Plaintiffs made efforts in April 2010 to find the vehicle, it could not be found.

On the other hand, Defendants made no request to inspect the pick-up truck until February 2010. This was more than a year and three months after Plaintiffs' counsel requested that the Defendants' vehicle be made available for inspection. This conduct belies Defendants' subsequent self-serving assertion that Plaintiffs were on notice immediately after the accident that the pick-up truck was relevant evidence which they had a duty to preserve. Furthermore, Defendants' failure in November 2008 to request inspection or preservation of the pick-up truck may have led Plaintiffs' counsel to believe that it was not necessary to pursue efforts to locate the pick-up truck. In sum, neither party nor its counsel demonstrated significant foresight regarding the possible relevance of its vehicle or exercised diligence to preserve it for later inspection by the other side.

The final issue is whether either party is prejudiced by the other party's failure to preserve its vehicle and, if so, what remedy is appropriate under the circumstances. It is undisputed that Defendants' vehicle was traveling 75 miles per hour when it struck the rear of Mr. Powell's vehicle. There is an obvious question as to why Defendant Solovi did not stop, slow down or take evasive action before impact. Assuming that the headlights on the Freightliner were functioning

properly, Mr. Solovi arguably should have been able to see Mr. Powell's vehicle in time to avoid the collision. Besides speculation, however, there is no evidence that the headlights on Defendants' vehicle were not functioning properly prior to impact. As Plaintiffs contend, fatigue or illness may have contributed to Mr. Solovi's failure to recognize the peril. Mr. Solovi admitted in his deposition testimony that he was responsible for causing the accident. On balance, therefore, Plaintiffs' ability to prove that Defendants were negligent is not substantially prejudiced by their inability to inspect the headlights or wiring assembly on the tractor.

The Court also concludes that Defendants have not been significantly prejudiced by their inability to inspect Mr. Powell's vehicle. Defendants will attempt to introduce testimony by their medical expert that Mr. Powell probably suffered a physical or mental episode which caused him to stop or slow down and also impaired his judgment in failing to remove his vehicle from the travel lane. Obviously, Defendants would have a stronger defense if they could also show that the taillights on Mr. Powell's vehicle were not functioning prior to impact. Other than Defendants' expert's speculative hypothesis about corruption of the taillight wiring connections, there is no reason to believe that an inspection would have shown that the taillights were not illuminated before impact. Moreover, Defendants failed to make any timely request to inspect the pick-up truck. This also militates against imposition of sanctions based on the belatedly raised theory of their expert.[1]

**2.   Defendants' Request for Sanctions Based on Plaintiffs' Failure to Produce Requested Documents.**

Defendants also move for sanctions based on Plaintiffs' failure or refusal to produce documents requested by Defendants. Although Defendants' motion cites numerous requests for production, Defendants only seek sanctions in regard to Plaintiffs' failure to produce Mr. Powell's

---

[1] Plaintiffs have suggested that Mr. Powell may have slowed down or stopped because of a mechanical problem. In response to such an assertion at trial, Defendants are entitled to point out that Plaintiffs made no effort to preserve the pick-up truck for possible inspection. It may be appropriate in this circumstance to also instruct the jury that it may infer that Mr. Powell's vehicle did not experience a mechanical problem. Otherwise, the Court concludes that neither party should be sanctioned for failing to preserve its vehicle for inspection by the opposing party.

daily driving logs (Request No. 29) and the pre-trip vehicle inspection report(s) for Mr. Powell's pick-up truck (Request Nos. 34 and 38). Defendants also complain about the disorganized state of records that Plaintiffs produced to them and the burden this imposed on Defendants in reviewing the documents.

Defendants filed a motion to compel Plaintiffs to provide responses to requests for production on June 6, 2010. *Defendants' Motion to Compel (#36)*. Defendants argued that Plaintiffs had produced few, if any, documents in response to the requests. Plaintiffs responded to the motion to compel by stating that Mrs. Powell suffered a stroke approximately 60 days after the accident which adversely affected her ability to locate and produce responsive documents. *Opposition to Motion to Compel (#38)*. Because Plaintiffs' counsel had done little to assist Ms. Powell in locating and producing responsive documents, the Court ordered Plaintiffs to conduct a search for additional responsive records. *Minutes of Proceedings (#44)*, July 16, 2010. In particular, the Court directed Plaintiffs' counsel to send an attorney or paralegal to Mrs. Powell's home or wherever Mr. Powell's records were stored to search for records responsive to the requests. The Court also ordered Plaintiffs' counsel to file an affidavit describing the search and providing a certification that Plaintiffs had produced all responsive records in their possession, custody and control. *Id.*

On August 11, 2010, Plaintiffs' counsel's law clerk, Brett Johnson, filed an affidavit stating that he traveled to Plaintiff's residence in Hemet, California on July 27, 2010, that Plaintiff opened up her property for his inspection and that Mr. Johnson spent several hours looking through Ms. Powell's mobile home, two outside storage sheds and a commercial storage shed for documents. Mr. Johnson stated that he was able to locate several boxes of documents in these locations. He further stated: "Every related document that was located has been produced to Defendants for inspection and copying; no related documents we could identify within Mrs. Powell's possession, custody or control were withheld." *Affidavit of Compliance with the Court's Order Dated July 16, 2010 (#48)*. Defendants' counsel states that documents produced by Plaintiffs were in complete disarray and that he spent more than twelve hours going through them to determine what had been provided–which turned out to be very little in the way of relevant information. *Defendants' Motion*

*for Sanctions (#104), Exhibit D, Michael Mills Affidavit.* Plaintiffs argue, however that they produced the records in the manner in which they were kept in the ordinary course of Mr. Powell's business. Plaintiffs also contend that the records were not as disorganized as Defendants claim. Plaintiffs attached a photograph to their opposition which purportedly shows the produced documents in labeled manila folders. *Opposition (#111), Exhibit 20.*

      Rule 34(b) of the Federal Rules of Civil Procedure provides that a party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond to the categories in the request. The rule does not give a party *carte blanche* to produce documents in a completely disorganized condition because that is how she "maintains" them. The court in *In re Aldelphia Communications Corp.,* 338 B.R. 546 (S.D.N.Y .2005) stated that "[t]he purpose behind the 1980 Amendment that added the 'usual course of business' language to Rule 34(b) was to allow the discovering party access to business records in the manner documents were normally maintained by the producing party to prevent deliberate 'shifting of the materials from the sequence which they were ordinarily kept to somewhere else ...' 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2213." The court stated, however, that any archived documents produced must be thoroughly indexed, the boxes accurately labeled and the depository kept in good order. The court did not endorse a method of document production that merely gives the requesting party access to a "document dump." *Id.*, citing *Hagemeyer North America v. Gateway Data Sciences Corp.*, 222 F.R.D. 594, 598 (E.D.Wis.2004) and *Doe v. Nat'l Hemophilia Foundation,* 194 F.R.D. 516, 518 (D.Md. 2000). *See also Residential Constructors, LLC v. Ace Property and Casualty Ins. Co.*, 2006 WL 1582122 at *3 (D.Nev. 2006). The court in *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 413 (S.D.N.Y. 2009) further states that "[t]he purpose of the Rule is to facilitate the production of records in a useful manner and to minimize discovery costs; thus it is reasonable to require litigants who do not create and/or maintain records in a 'routine and repetitive' manner to organize the records in a usable fashion prior to producing them." The Court therefore rejects the argument that Plaintiffs were entitled to produce Mr. Powell's business records in whatever condition they were found.

Defendants, however, did not file a motion to further compel Plaintiffs to organize and label the documents to correspond to the categories in Defendants' requests. If Defendants had done so, the Court would have been in a position to evaluate the condition of the documents and decide whether Plaintiffs should be required to organize and label them. Defendants' counsel chose, instead, to review the documents as produced and then waited five months before raising the issue with the Court. The Court, therefore, will not impose sanctions on Plaintiffs based on the allegedly disorganized condition of the documents they produced.

Defendants argue that Plaintiffs should be sanctioned for not preserving Mr. Powell's daily driver's log which Defendants allege is critical to determining what level of rest Mr. Powell had prior to the accident. *Motion for Sanctions (#104), page 8*. Defendants note that the Nevada Highway Patrol's Vehicle Report stated that miscellaneous clothing, tools and paperwork were located in Mr. Powell's vehicle. *Id., Exhibit L*. Defendants also cite Mrs. Powell's deposition testimony in which she was asked where Mr. Powell normally kept his driving records. Mrs. Powell answered that she did not know for sure, but guessed that he usually kept them in the "car." *Reply (#113), Exhibit O, Olga Powell Deposition page 94*. Mrs. Powell was asked if she retrieved anything from Mr. Powell's pick-up truck after the accident. She answered that she got a GPS unit, handcuffs[2] and a pouch in which Mr. Powell kept his maps and other "stuff." Mrs. Powell was asked if Mr. Powell's daily logs were in the pick-up truck. She stated that she didn't see any logs, although they may have been in the vehicle. *Id., page 95*. Defendants also argue that Mr. Powell's pre-trip inspection report on his vehicle, assuming he prepared one, should have been in his vehicle after the accident and Plaintiffs should be sanctioned for failing to preserve the vehicle inspection report.

Mrs. Powell would have been well advised to retrieve and preserve any business records in Mr. Powell's pickup truck. Plaintiffs contend, however, that Mrs. Powell was not substantially involved in Mr. Powell's business and, by inference, not necessarily aware of the documents he maintained or was required to maintain. It is reasonable to infer that Mrs. Powell was distressed by

---

[2] The Court is informed that Mr. Powell also worked as a "bounty hunter."

her husband's death. She also suffered a stroke approximately 60 days after the accident. Under these circumstances, Mrs. Powell's failure to retrieve Mr. Powell's paperwork from the vehicle does not warrant the giving of an adverse inference or imposing other sanctions.

Defendants also state that Mr. Powell was an insulin dependent diabetic and had also been prescribed a "CPAP" machine to treat his sleep apnea. Defendants assert that Mr. Powell's medical history indicates that he did not comply with recommended medical treatment and this could have been a factor in his driving behavior. There was no indication in the accident report that insulin, syringes, or a CPAP machine were found in Mr. Powell's vehicle. Defendants argues that Mrs. Powell should be sanctioned for not searching for and preserving these items if they were in Mr. Powell's vehicle. There is no basis to conclude, however, that Mrs. Powell was on notice prior to the filing of this lawsuit that her husband's pre-accident medical condition and treatment would be an issue in this case. Sanctions are therefore also not warranted on this basis.

**3.    Plaintiffs' Motion to Compel and for Sanctions.**

Plaintiffs have moved to compel Defendants to further respond to requests for production of documents and to answer Plaintiffs' Third Set of Interrogatories. The subject document requests are listed on page 6 of Plaintiffs' Motion to Compel (#112). The Court ruled on these matters during the March 15, 2011 hearing as follows:

(1) Defendants have now produced documents evidencing the weight of Defendant Solovi's vehicle. No further order is required.

(2) Defendants state that they have searched for, but have not been able to locate "roll sheets," i.e. attendance records, for safety meetings attended by Mr. Solovi. Based on Defendants' representation that no responsive documents exist, an order to compel will not be issued.

(3) Defendants state that they have confirmed that they have provided the telephone records for the company telephone possessed by Defendant Solovi on the date of the accident. Based on Defendants' representation that no other responsive documents exist, an order to compel will not be issued.

(4) Request for documents related to investigation conducted by Defendants' insurer. (*See discussion infra.*)

(5)     Defendants will produce the driver's log of the co-driver Euini Tala Tala for the trip on which the accident occurred.

(6)     Defendants state that the Freightliner Mr. Solovi was operating at the time of the accident was relatively new and there are no maintenance records on the vehicle for the period preceding the accident. Based on Defendants' representation that no responsive documents exist, an order to compel will not be issued.

In regard to item (4), it is doubtful that Plaintiffs can compel Defendants' liability insurer to produce its investigative file pursuant to a Rule 34 request for production served on the Defendants. *See Henderson v. Zurn Industries, Inc.*, 131 F.R.D. 560, 565-67 (S.D. Ind. 1990) (holding that a party can be required to produce documents that he turned over to his insurer or a statement that he gave to the insurer, but the court cannot require a non-party insurer to produce its investigation file pursuant to a Rule 34 request to the defendant-insured). On the Court's recommendation, however, Defendants and their insurer have agreed to submit for *in camera* review all documentary evidence in the insurance company's claim file regarding its investigation other than its claim notes. *See Defendants' Status Report (#131), filed March 17, 2011.* The Court will review these documents and determine whether they contain factual information for which Plaintiffs have substantial need and which they cannot obtain by other means without undue hardship.

Defendants objected to Plaintiffs' Third Set of Interrogatories (Nos. 24 and 25), on the grounds that the preceding interrogatories, including discrete sub-parts, exceeded the authorized limit of 25 interrogatories under Fed.R.Civ.Pro. 33(a)(1). *Kendall v. GES Exposition Services Inc.*, 174 F.R.D. 684, 685 (D.Nev. 197) states that interrogatory sub-parts are to be counted as part of but one interrogatory if they are logically or factually subsumed within and necessarily related to the primary question. The court stated that the best test to determine whether sub-parts are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question. If the question in the sub-part can be answered independently of the "primary" question, then it should be treated as a separate interrogatory. The foregoing test is not precise and parties may reasonably differ on whether the sub-parts of a particular interrogatory constitute discrete questions.

In this case, Plaintiffs previously served 23 interrogatories on Defendants. In general, the sub-parts in preceding interrogatories are secondary to the primary questions. Interrogatory No. 8, however, contains at least two separate questions, the first relating to any conversations that Defendants, or their agents, had with any person about the occurrence, and the second relating to whether Defendants, or their agents, "overheard any statements made by any person at any time with regard to the injuries complained of by the plaintiff or the manner in which the occurrence complained of occurred." Interrogatory No. 9 also asks at least two discrete questions regarding criminal activity, i.e., misdemeanors involving dishonesty or false statements of any kind (question one) or a felony of any kind (question two). Interrogatory No. 10 also asks Defendants to identify and produce documents relevant to the information sought in the interrogatory. *Kendall* states that this type of interrogatory is actually a fugitive request for production and should be requested in that format. Other interrogatories such as Interrogatory No. 11 could be fairly construed as asking more than one discrete question. The Court therefore finds that Plaintiffs first 23 interrogatories equal or exceeds the authorized limit of 25 interrogatories under Rule 33(a)(1).

Because the total number of interrogatories does not substantially exceed the authorized limit of 25 interrogatories, the Court would be inclined to waive the limit if Plaintiff had demonstrated good cause for the additional interrogatories. Interrogatory No. 24 asked Defendants to identify with specificity any evidence that the hazard lights on Mr. Powell's pick-up truck were not flashing at the time of the collision. Interrogatory No. 25 asks Defendants to identify any evidence that Plaintiffs had the possession, custody or control of the pick-up truck after the June 11, 2008 accident. The need for answers to these interrogatories has been substantially resolved by the Court's denial of Defendants' motion for sanctions. Accordingly, Defendants objections to Interrogatory Nos. 24 and 25 are sustained.

Based on the foregoing,

**IT IS HEREBY ORDERED** that Defendants' Motion Requesting an Order to Show Cause As to Why Sanctions Should Not Issue Against Plaintiffs (#104) is **denied**.

**IT IS HEREBY FURTHER ORDERED** that Plaintiffs' Motion to Compel and for Sanctions (#112) is **granted**, in part, and **denied**, in part, as follows:

1. Plaintiffs' motion for sanctions against Defendants for failing to preserve Defendants' vehicle or component parts is denied.

2. Plaintiffs' motion to compel Defendants to produce documents is granted to the extent that Defendants are ordered to produce the driver's log of the co-driver Euini Tala Tala for the trip on which the accident occurred, and Defendants, or their insurer, shall submit the insurer's investigation file other than claim notes for *in camera* review by the Court. Otherwise, Plaintiffs' motion compel further production of documents is denied.

3. Plaintiffs' motion to compel Defendants to answer Interrogatory Nos. 24 and 25 is denied.

DATED this 22nd day of March, 2011.

_____
GEORGE FOLEY, JR.
U.S. MAGISTRATE JUDGE